*EMMAZETTA ROBERTS, EXRX. v. JOHN B. BRISCOE.

1. DISQUALIFICATION OF ASSIGNOR AS A WITNESS.

In an action by the asignee of a promissory note against the executor of the maker, the assignor is by sec. 5241 Rev. Stat., prohibited from testifying concerning any facts which occurred before the death of the testator not within the other exceptions specified in sec. 5242 Rev. Stat. Such disqualification of the assignor as a witness is not made to depend upon his being called by the assignee, but exists as well when called by the executor.

2. COMPETENCY OF VERBAL DECLARATIONS OF PRIOR HOLDER, TO IMPEACH NOTE.

In such action written or verbal declarations of a prior holder by endorsement. made before he became such, are not competent evidence to affect the title of the plaintiff, or impeach the note in his hands; and where on the trial of such action, the statement of the plaintiff for the purposes of the trial, and the charge of the court to the jury wholly eliminate from the case all claim of the plaintiff to stand upon the rights of an innocent purchaser, the rejection of such declarations is not prejudicial error, if they were otherwise competent to prove that such prior holder was not a *bona fide* endorsee.

3. DECLARATIONS OF AN ALLEGED CONSPIRATOR.

The declarations of an alleged conspirator cannot be given in evidence to charge his fellow until after sufficient proof of the *fact* of conspiracy, and then only such as were made during the pendency of the enterprise.

4. ADMISSIBILITY OF APPEARANCE DOCKET ENTRY.

The summary statement of the clerk entered upon the appearance docket, of the prayer of a petition filed by the maker of the note against the payee, of which the plaintiff had no notice, is not admissible in evidence against the plaintiff to prove want of consideration in the note or fraudulent transfer of the same, nor for the purpose of shifting upon the plaintiff the burden of proving consideration.

ERROR to the Court of Common Pleas of Greene county.

WILLIAMS, C. J.

On the 13th of November, 1882, John B. Briscoe filed his petition in the common pleas court of Greene county, Ohio, against Micajah W. Roberts, alleging in substance:

1st. That on the 30th day of September, 1880, Roberts made and delivered his two promissory notes of that date, calling for $3,500 each, to one Jennie Mansfield. Each of said notes is payable to said Jennie Mansfield, or order, one in twelve months and the other in eighteen months after date, and each bearing interest from date at 6 per cent.

2d. That before the maturity of either of said notes, said Mansfield indorsed and delivered the same to one Mouch, who on the 27th day of March, 1881, indorsed and delivered the same, without recourse, to plaintiff.

3d. That the amount of said notes, principal and interest, is due to plaintiff and unpaid.

The defendant answered in substance:

1st. Denying the execution of said notes, and also denying the other allegations of the petition.

2d. Alleging that if his signature was genuine, it was obtained by fraud, and the notes were filled up without consideration and without his knowledge or consent; that each of said endorsees had full notice of such fraud and want of consideration, before and at the time of said transfers, and that neither the plaintiff, or any of said endorsees received the notes in good faith, or for value, or with intent to become owners thereof. But the endorsements were made for the use and benefit of said Mansfield, and to enable her to avoid defense to the suit upon them.

The reply controverts the allegations of the new matter in the answer.

The case was tried to a jury, and a verdict returned for the plaintiff.

A motion for a new trial was overruled, and judgment entered on the verdict.

This petition in error is prosecuted to reverse that judgment.

The errors assigned are predicated upon three several bills of exceptions, taken during the progress of the trial.

---

*This case was reversed by the Supreme Court, for rejection of testimony. See opinion 44 O. S., 596.

No. 1. The first one relates entirely to the competency or incompetency of Jennie Mansfield as a witness to certain matters. This bill of exceptions states, that the plaintiff, having offered testimony tending to prove that said M. W. Roberts had signed and delivered the notes in suit and the indorsements thereon, and having rested his case, the defendant offered Jennie Mansfield as a witness, and proposed to prove by her that she was the Jennie Mansfield to whom the notes were executed, and to prove by her that the said notes were without consideration of any kind; that when said Roberts signed said notes, he was not aware that he was signing promissory notes, and did not intend to sign a promissory note, and in signing said paper believed he was signing a letter for her, nothing being then written above. And the defendant also expected to prove by her, the date of the transfer to Mouch, and to Rowley; the circumstances surrounding the same, and that neither Mouch or Rowley were holders for value, or in good faith; also to prove by her, that neither Mouch or Rowley had ever paid to her any consideration whatever. Defendants also offered her as a witness generally to all the issues of the case, prior to the death of M. W. Roberts, who died July, 1883, as is agreed by counsel. Whereupon the plaintiff objected to said Jennie Mansfield as a witness in so far as any transaction, or fact, prior to the death of said M. W. Roberts, was concerned, which objection was sustained by the court, and said Mansfield was excluded as a witness, as to all facts, circumstances, etc., occurring prior to the death of said Roberts. To all of which the defendant excepted.

This action of the court, it is claimed by the plaintiff in error, was erroneous. It is claimed, that under secs. 5240, 5241 and 5243, Rev. Stat., said Mansfield was a competent witness generally, if called by the defendant, while the defendant in error justifies the action of the court under secs. 5241 and 5242. The solution of this question depends upon a proper construction of these sections.

Section 5240 provides, that all persons are competent witnesses except those of unsound mind, and certain children under ten years of age. Section 5241 reads as follows: "The following persons shall not testify in certain respects:"

Sub-division 4. "A person who assigns his claim or interest, concerning any matter in respect to which he would not, if a party, be permitted to testify."

Section 5242. "A party shall not testify where the adverse party is the * * * executor or administrator of a deceased person, * * * except, first to facts which occurred subsequent to the time the decedent or testator died."

Section 5243. "A party may compel the adverse party to testify as any other witness may be thus compelled."

The claim of the plaintiff in error is, that inasmuch as she could have compelled Jennie Mansfield to testify, if she were a party, she had the right to compel her to testify against her assignee; or that if the terms of sec. 5241 do not confer that right, such right is plainly within the intent and spirit of the sections taken together.

On the other hand the defendant in error claims, that neither by the language or spirit of the sections is she made a competent witness. It will be seen that the prohibition of section 5241 is absolute, and extends to all cases therein specified, without any reference to the party calling the witness. "The following persons *shall not* testify, etc."

The language of the fourth subdivision, specifying the class within the prohibition, is— " A person who assigns his claim, * * * concerning any matter in respect to which he would not, if a party, be *permitted* to testify." That is, such person shall not testify at all *concerning* such matter without any regard to which party calls him. Combine these sentences and they will read, " A person who assigns his claim * * * shall not testify concerning any matter, etc."

Combine this with the matter concerning which he would not, if a party, be permitted to testify, and the clause would read: " A person who assigns his claim shall not testify where the adverse party is an executor, except to facts which occurred subsequent to the time the testator died." Thus it is evident that the plain language of the statute leaves the inhibition against such assignor testifying absolute and without qualifications in the cases named. The term " permitted " in sec. 5241, is used in the sense of privilege, and in contradistinction to the word " compelled " in sec. 5243. The assignor is absolutely prohibited from testifying to anything it would not have been his privilege to testify to if he were the party. This prohibition is neither removed or qualified by his being called by the executor, nor by sec. 5243. The effect of sec. 5241 is, that a person who assigns his claim, * * * shall *not* testify concerning any matter to which he would not, if a party, have the privilege of testifying. A party has not the privilege of testifying, where the adverse party is an executor, to facts occurring before the testator's death, not within the other exceptions specified in sec. 5242. The interdiction contained in these sections is, that the assignor shall not testify at all *concerning* such matter. To give the section the effect claimed by the plaintiff in error, it would read: " A person who assigns his claim, * * * shall not *testify in behalf of his assignee,* concerning any matter in respect to which he would not, if a party, have the privilege of testifying, but may be compelled to testify by the adverse party." The language of this section does not make the incompetency of the witness to depend upon his being called by one or the other party, but such disqualification exists without regard to who may call him. To give the. statute the meaning claimed by the plaintiff in error, it would have to be enlarged by construction, by the interpolation of certain words in the same, so as to read thus: " A person who assigns his claim * * * shall not

577                           Roberts, Executrix, v. Briscoe.

testify *in behalf of his assignee*, where the adverse party is an executor, except to facts which occurred subsequent to the time the testator died; or, "a person who assigns his claim * * * shall not testify where the adverse party is an executor, except to facts which occurred subsequent to the time the testator died, *unless called by such executor as a witness in his behalf.*" Thus extending the provisions of the statute by construction, would be judicial legislation. It will be noticed that in the construction of the various provisions of the statute, on this subject, the Supreme Court has adhered closely to its language. This was so in Myers v. Walker, 9 O. S., 558; Bomberger v. Turner, 13 O. S., 269-70; and in the case of Elliot v. Shaw, 32 O. S., 431, where it was claimed the word "grantee" as used in sec. 5242, was intended to be and was used in a sense broad enough to include one who purchased a chose in action, the Supreme Court say: "Undoubtedly it would have been consistent with the theory upon which these exceptions to the provisions of sec. 310 were enacted, to have included assignees of personal property and choses in action. Had that been the legislative intent, it is quite apparent from the particularity observed in specifying the cases to be excepted, that assignees would have been mentioned, by adding the words, "grantees and assignees," to the class designated by the words, "heir and devisee." But, instead of doing that, the word grantee was alone inserted between the words heir and devisee, as if it was the intent that its meaning should be known by its association. The words, heir and devisee, properly applied exclusively to real property. The word in question, then, is so associated in the clause to which it belongs, that the maxim, *noscitur a sociis*, clearly applies, and excludes a construction of the word grantee, as used in this section, which would extend it beyond its strict and usual meaning as applied to real property."

So we may say here that the legislature had the whole subject before it. It would have been an easy matter to have limited the inhibition against an assignor testifying, to cases where he was called by his assignee. The fact that the legislature did not do so, but left the prohibition without limitation or qualification, is significant, and a court would hardly be authorized to assume that it was accidental The safe rule is to adhere to the plain language of the statute. A search for the spirit of a statute, beyond the domain of its language, is an uncertain voyage upon an unknown sea without the compass of a fixed principle, and guided only by the whims of the mariner.

No. 2. The second bill of exceptions states: The plaintiff having introduced the notes in evidence, and proof as to the signature and endorsements, and the defendant having entered upon her case, produced T. E. Scroggy as a witness, who testified that he was acquainted with Jerome Rowley, the person to whom the notes in controversy purported to have been endorsed, and with his handwriting; and defendant having introduced testimony previously, tending to show that said Rowley had advanced $100 in cash, as security for costs in this case, and other sums of money for taking depositions therein, offered in evidence the two letters, copies of which are hereto attached, marked exhibits "A" and "B," and made a part of this bill, the said Scroggy having stated that said two letters were in the handwriting of said Rowley, and having so deposed; and thereupon the plaintiff objected and stated that he relied only on the title of the plaintiff, and that he had purchased in good faith and not on the title of Rowley; and defendant thereupon asked plaintiff whether it was admitted that said Rowley was not an innocent holder for value, to which the plaintiff responded, "no." Defendant insisted upon reading said letters to the jury, but the court overruled said offer and both counsel and court told the jury, that under the statement of counsel for plaintiff they could not find a verdict for plaintiff, unless they found that he was an innocent endorsee of the notes in suit. Counsel for defendant excepted to the action of the court in refusing to allow the letters to be read in evidence. These two letters are as follows:

"A."                                      " MT. VERNON, O., March 23, 1881

" MRS. JENNIE MANSFIELD:

"Yours of the 22d duly received which I take the earliest opportunity to reply to. I could come over any time but before coming I wish you to write by return mail—give me the amounts of the notes and when due. You know I would have to be an innocent purchaser, so keep all that passes between us strictly to yourself. As soon as I can hear from you I will let you know when I will come, or if it should be better for you to come here, meet me with the notes anywhere else. I will let you know.

                    "Yours with respect,

                                                 " JEROME ROWLEY."

"B."                                      " MT. VERNON, O., March 28, 1881.

" MISS JENNIE MANSFIELD:

"Yours of the 25th just rec'd and contents noted. In reply will say I have taken good counsel, confidential counsel, and it will be better for you to come here with the notes. If you will come I will pay your fare. It will not be necessary for you to be here only one night. You can get here on the 2:17 p. m. train or the 6:54 p. m.; if you come you need not let any one there know where you are going. If you come stop at the Philo House and drop me a line or telegraph me what day you will come. If you cannot come I will come there, but it would be best for you to come here, and when we meet I will tell you all that can be done

and all that the best counsel say. If you come I will meet you at the train. You can have a veil over your face and not be known by any one and will not need any baggage but a carpet sack. Yours as ever, friend.                                                    J. R."

"I will not say anything to Will or Beck or anyone else, all confidential as a friend, and if I cannot do you any good, will do no harm, this you can rely on.                     J. R."

This bill of exceptions does not show, that up to this time any testimony had been given tending to prove a want of consideration in the notes, or fraud in their procurement; nor any statement of counsel of any expectation to offer such testimony; nor any to prove plaintiff's knowledge of the letters or connection with them; nor indeed to prove that the notes referred to in the letters were the notes in suit, or that there was any connection between them. The only purpose claimed for them was to show that Rowley was not at the date of the letters, the owner of the notes, and might be inferred to have some knowledge of their infirmity. After the statement by counsel for the plaintiff in open court for the purpose of the trial, and the instructions of the court to the jury to the effect that plaintiff relied entirely on his own want of knowledge of any supposed infirmity in the notes, and not on Rowley; and that unless plaintiff himself was found to be an innocent purchaser he could not recover, rendered the proof contained in the letters, if otherwise competent, immaterial and its rejection not prejudical. Grepel v. State, 32 O. S., 167.

Besides, the charge of the court to the jury wholly eliminates from the case all right of the plaintiff to stand upon any claim of purchaser without notice, and submitted the case to the jury divested of all obligations on the part of the defendant to prove notice to any endorsee.

It is doubtful if the letters were otherwise improperly rejected.

1. It does not necessarily appear that the notes were the same in suit; nor was evidence given or offered to show they were. It will be presumed they were not. Every presumption will be made in favor of the judgment below.

2. It appears from these letters themselves, that Rowley was not the owner of whatever notes are referred to in them. It is well settled that the declarations of an assignor are not competent evidence against his assignee, made before the assignor had acquired title, or after he has parted with his title. His declarations, to be competent against the assignee, must be made while he is the owner. Abbott's Trial Evidence, p. 11, secs. 27, 28, 37 and 39.

These letters are the mere declarations of Rowley before it is claimed he became the owner. The real ground upon which it is claimed by the plaintiff in error that these letters were competent, and therefore improperly excluded, is that they tend to prove a conspiracy. As before remarked, the bill of exceptions does not show that any evidence of a conspiracy, involving the plaintiff, had been given up to the time the letters were offered. The presumption in support of the judgment is that there was no such evidence. To make these letters competent on the ground of conspiracy, it was necessary that proof should have been first offered tending to prove the conspiracy, and that plaintiff was in the conspiracy. Until such proof was first given, the letters were not competent; and to show error affirmatively on the record, the bill of exception should show that such evidence of conspiracy was given. Foi these letters do not prove the fact of a conspiracy on the part of the plaintiff. They would merely be evidence of acts and declarations of one of the alleged co-conspirators in furtherance of the conspiracy.

The rule is: The acts and declarations of a conspirator may, after sufficient proof of the fact of the conspiracy, be given in evidence to charge his fellow—but then only such as were made and done during the pendency of the enterprise. Patton v. State, 6 O. S., 467.

The fact of conspiracy must first be proven by evidence *aliunde*, sufficient to establish, *prima facie*, in the opinion of the court, the conspiracy. Then, and not till then, are the declarations of one against the other competent. 1 Wharton Crim. Law, sec. 702.

No. 3. The third bill of exceptions relates to the exclusion of the entries on the appearance docket in an injunction suit of Roberts v. Mansfield, but to which suit the plaintiff, Briscoe was not a party. Proof of the loss of the original papers, and the fact that a complete record had not been made up, was given before offering the appearance docket. These entries show, that March 22, 1881, Roberts filed his petition against the First National Bank of Xenia, O., Jennie Mansfield, M. Moch, H. Mayer, and the Peoples' Bank of Wapakoneta, O., with allowance of temporary injunction; bond filed; summons issued and served March 23d, 24. The clerk states on the docket: "plantiff prays for surrender of three promissory notes for $3,500, each purporting to be made by plaintiff, and for injunction restraining Xenia Bank from disposing of, and each of the other parties from interfering with same." This is the clerk's construction of the scope and purpose of the petition. No other proof of the contents of the papers was offered. If for no other, this testimony was not improperly rejected, for the reason that no sufficient secondary evidence of the contents of the pleadings was offered after showing that they were lost. The mere summary of what the clerk conceived to be the prayer and purpose of the petition was not sufficient proof of the contents of the lost record. It might be in part. But no offer was made to furnish complete proof as required by the rule. This action never passed into a decree, but was, as the appearance docket shows, continued from time to time. It was not claimed that plaintiff had any notice of this suit, nor is it claimed that the doctrine of *lis pendens* applies to negotiable paper. Stone v. Elliott, 11 O. S., 252; Howe v. Hartness, 11 O. S., 449.

But it is claimed that the record might be competent for the purpose of shifting the burden of proof to the plaintiff under the case of Davis v. Bartlett, 12 O. S., 534.

That case decides, that upon the defendant's proving the want of consideration and fraudulent transfer of the notes as between himself and the payee, it was incumbent upon plaintiff to show that he received the notes for valid consideration. Does this record tend to prove either want of consideration as between the defendant and Jennie Mansfield, or to prove a fraudulent transfer of the notes by her? The petition is simply Roberts' statement of his claim. The petition would not in a suit directly by Mansfield, be competent evidence to prove that there was no consideration for the notes. It is simply Roberts' statement in his own behalf. Certainly it does not, as against the plaintiff, not a party to the suit, in any sense tend to prove either a want of consideration, or fraudulent transfer. It could not therefore have any effect toward shifting the burden of proof. Here again the bill of exceptions fails to show that any evidence whatever, was given by defendant to prove want of consideration, and we cannot presume it was given for the purpose of aiding the admissibility of the evidence rejected. The presumption is, in the absence of any showing in the bill of exceptions to the contrary, that the court below did its duty upon the facts before it, and therefore that it had the necessary facts before it to support its action. Bartlett v. State, 28 O. S., 669 ; Johnson v. Mullin, 12 O., 10; Palmer v. Yarrington, 1 O. S., 253; Wetmore v. Mell, 1 O. S., 26 ; Bethel v. Woodworth, 11 O. S., 393-397; Taylor v. Fitch, 12 O. S., 169; L. M. R. R. Co. v. Collett, 6 O. S., 182.

The errors assigned do not affirmatively appear on the record, and the judgment of the court of common pleas is affirmed with costs, but without penalty.

E. H. Munger and John A. McMahon, for plaintiff in error.

T. E. Scroggy, for defendant in error.